MAINE MUTUAL MARINE INSURANCE COMPANY *vs.* EDWIN S. FARRAR.

Penobscot, 1876.—December 22, 1876.

*Promissory notes. Trial.*

Premium notes for an open policy given under § 9, of the plaintiff's charter, "for the better security of those concerned," are upon good consideration, and if needed for the purpose of paying claims are enforceable against the signers.

When a premium note is given for an ordinary open policy, and not under § 9, the maker is not liable beyond the earned premium, while the note remains in the possession of the corporation to which it was given.

When a note was given after the organization of the plaintiff corporation, and after the amount required by § 10, of the charter to authorize the issuing of policies, it is for the jury to determine whether the note was given under § 9, and as a part of the security of dealers or as an advance premium in the usual course of business.

ON EXCEPTIONS AND MOTION.

ASSUMPSIT on a note set out in the opinion.

The defense was that the note was given, not under § 9 of the charter of the company for "the security of dealers," but for an open policy for premiums in advance to be earned by the company ; that the defendant had paid for all earned premiums, leaving nothing due on the note.

The relation of the company to the signers of notes of similar form, appears more or less fully in several reported cases. *Howard* v. *Palmer*, 64 Maine, 86. *Same* v. *Hinckley Co.*, id. 93. *Maine Ins. Co.* v. *Blunt*, id. 95. *Insurance Co.* v. *Hodgkins*, *ante*, 109. *Iron Co.* v. *Insurance Co.*, *ante*, 118. *Insurance Co.* v. *Pickering*, *ante*, 130.

The verdict was for the defendant; the plaintiffs moved to set it aside, and also alleged exceptions.

Other facts and the points raised in this case, appear in the opinion.

*C. P. Stetson*, for the plaintiffs.

This is an action on a note of $1,001 ; and the only difference between the case at bar, and the cases, *Howard* v. *Palmer*, *Same* v. *Hinckley & Egery Iron Co.*, *Maine Mutual Marine Ins. Co.* v. *Blunt*, reported in 64 Maine, 86, 93, 95, is, that Farrar did not sign the original agreement, as did the parties in those cases. This is of no consequence. *Bouvier* v. *Appleby*, 1 Sandf. 170.

The agreement of the secretary with Farrar, when the note was given, that the note should be given up at the end of the season, was void, should not have been received as evidence, and canno affect the note. *Same case*, 170, 174.

The whole testimony in the case shows that this note was an advance premium note, and as such, in case the losses of company required, the maker was liable to pay it. The original $500 note was dated April 26th, 1870, on eight months, in the same manner as the notes given under the agreement, for the better security of those dealing with the company. Its renewal was dated January, 1871, same as the other notes given under the ninth section of the charter, and the note in suit given in renewal of that. The president, Mr. Ladd, says that the note in suit was represented as part

of the assets of the company—the same as the other notes included in the annual reports, and sent forth to the public as the capital upon which those insuring could rely in case of loss—and treated in every respect as the notes given in the cases v. *Palmer, Hinck-ley & Egery Iron Co.,* and *Blunt.*

We contend that the verdict was against law and evidence.

Because the testimony shows that this was an advance premium note, and as such for the security of those dealing with the company, could be negotiated to pay losses, and could be enforced so far as required, to pay the losses of the company.

The plaintiff having given the note to the Maine Mutual Marine Insurance Company, and having taken an open policy from said company, was bound to know that it was given under the provisions of the charter, and bound to know what liabilities he incurred; he cannot plead ignorance of the law; he sent forth his note to the public to constitute with other notes a fund, upon which they could rely in case they insured in this company, and met with losses.

The charter contemplates that all notes shall be paid to the full amount, if the liabilities of the company require.

There were only two classes of notes given or recognized by the company; 1st, notes given for special policies, notes for the amount actually insured.

2d, advance premium notes—notes given for open policies; and all these notes were the assets of the company, on which the makers were liable,—on notes given for special policies absolutely, —on notes for open policies, or advance premium notes, so far as the liabilities of the company required.

It was not a question of fact for the jury to determine whether the note was given under § 9, of the charter; but the construction of the contract was for the court. *Smith* v. *Faulkner,* 12 Gray, 255.

*F. A. Wilson & C. F. Woodard,* for the defendants.

APPLETON, C. J. This is an action of assumpsit upon the following described note:

"BANGOR, January 1, 1872.

Twelve months after date, I promise to pay to the order of the Maine Mutual Marine Company one thousand and one dollars, payable at Bangor, Maine, value received. EDWIN S. FARRAR."

On the margin is written: "Given for special policy No. 115." The policy referred to is an ordinary open policy.

By the Special Act of 1870, c. 470, § 9, the plaintiff company, "for the better security of those concerned," was authorized to "receive notes for premiums in advance, of persons intending to receive policies," with a power to negotiate them, "for the purpose of paying claims or otherwise, in the course of its business;" and a compensation might be allowed to the signers thereof, at a rate not "exceeding six per cent. per annum."

By § 10, no policy was to be issued until applications should be made for insurance to the amount of fifty thousand dollars.

Before the company went into operation and commenced business, signatures were obtained to an agreement by parties to give their notes for premiums in advance in accordance with the charter and by-laws of the company. The amount of fifty thousand dollars was obtained; and in April 26, 1870, the company was duly organized and ready to issue policies.

The notes given in pursuance of the agreement, were for a sufficient and valuable consideration. The signers by the 7th by-law, and by a vote of the company, were allowed a compensation from the profits of the company for their signatures. The notes or their renewals are held by the plaintiffs, for the security of its dealers; and if needed for the purpose of paying claims, are enforceable against the signers, whether the plaintiffs are solvent or insolvent. *Howard* v. *Palmer*, 64 Maine, 86.

The policies for which notes under § 9 are given, are open policies. The makers of the notes have a right to have the amount paid for premiums indorsed on their notes; but their liability continues for the balance. *Merchants M. M. Co.* v. *Leeds*, 1 Sandf. S. C. 188. *Maine M. M. Ins. Co.* v. *Blunt*, 64 Maine, 95. So in case of renewals, they in like manner may be held liable for the security of the company, as on the notes originally given, and of which they are the renewals, when given under § 9. *Howard* v. *Hinckley & Egery Co.*, 64 Maine, 93.

The plaintiff corporation having organized, and having obtained the requisite amount of notes proceeded to the transaction of business. It might transact any business legitimate to the pur-

poses of its charter which is usual and customary for insurance companies. It might issue valued or open policies. If it issued to its customers open policies for which the insured gave their notes for the premiums, the makers would not be liable beyond the earned premiums. Nor indeed would they be bound to insure, but they might rescind at any time on paying the premiums written upon the policy and earned. *Brouwer* v. *Hill*, 1 Sandf. S. C. 629. *Merchants Mutual Ins. Co.* v. *De Puga*, 1 Sandf. S. C. 186. *Elwell* v. *Crocker*, 4 Bosw. 22. *Lawrence* v. *Mc Cready*, 6 Bosw. 329.

The plaintiff might increase the number of its notes given for the security of its dealers, under § 9, and for which the makers would be entitled to the compensation provided under that section.

The note in suit was given after the organization of the plaintiff corporation, and after they had obtained notes under § 9, for the amount required by § 10, to authorize their issuing policies of insurance.

· Under the New York charters referred to in the cases cited from the 1st Sandford's Reports, the twelfth section mentioned therein, corresponds to the ninth section of the plaintiff's charter.

The presiding justice instructed the jury that if the note was given under the provisions of § 9, of the charter of the plaintiff corporation, the verdict should be for the plaintiff; but if the jury should find it was not given under said section, then their verdict should be for the defendant.

This instruction is the only one to which exception has been taken; but it is in strict accordance with the authorities on the subject. In *Merchants' Mutual Marine Co.* v. *Rey*, 1 Sandf. S. C. 185, Oakley, C. J., states the law as follows : "When premium notes are taken subsequent to the organization of the company, it is a matter of fact, to be determined by the character of the note and the evidence, whether it was given as a subscription note under the twelfth section, to form a part of the fund for the security of dealers, or was given for premiums in advance in the usual course of business of the company."

The distinction between notes under § 9, which may properly be termed "subscription notes" and "premium notes," on ordinary

open policies issued by insurance companies, is fully recognized in *Elwell* v. *Crocker*, 4 Bosw. 22. The ruling of the court is fully sustained by a reference to the authorities cited.

· The question whether the note in suit was given under § 9, or was given as a premium note for an open policy merely, was submitted to the jury for their determination and their verdict is not so at variance with the testimony as to require us to set it aside.

*Exceptions and motion overruled.*

WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred. PETERS, J., did not sit.